

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**John M. Magliery**
(212) 603-6444 tel
(212) 379-5212 fax

johnmagliery@dwt.com

April 14, 2021

*Application DENIED. Pre-motion letter will e taken up at the conference. Plaintiff's counsel should advise whether he wishes to further amend by April 24, 2021. SO ORDERED.*
*Dated: 4/15/2021*

*P. Kevin Castel*
*United States District Judge*

Via ECF

The Honorable P. Kevin Castel
United States District Court
Courtroom 11D
500 Pearl Street
New York, NY 10007

      Re:    *Cheng v. T-Mobile US, Inc.*, Case No. 1:21-cv-01085-PKC: Request for Pre-Motion Conference on Motion to Dismiss First Amended Complaint

Dear Judge Castel:

This firm is counsel to defendant T-Mobile US, Inc. ("T-Mobile"), in the above-referenced action. Pursuant to Your Honor's Individual Practices § 3(A), we write to respectfully request a pre-motion conference on T-Mobile's anticipated Motion to Dismiss (the "Motion") the First Amended Complaint (the "FAC") filed by plaintiff Calvin Cheng. Further, T-Mobile requests the Court adjourn the initial pre-trial conference, currently set for May 6, 2021, at 12:00 p.m., until after disposition of the anticipated Motion.

      **A.**    **Mr. Cheng's Factual Allegations**

Mr. Cheng sued T-Mobile based on T-Mobile's purported "failures to protect and safeguard its customers' highly sensitive personal and financial information against … [third parties'] attempts to illegally obtain such information." (FAC ¶ 1.) The FAC, however, concedes that Mr. Cheng is *not* a T-Mobile customer, he never provided any information to T-Mobile, and T-Mobile never disclosed any information about Mr. Cheng.

Mr. Cheng's theory of liability is instead based on the following alleged chain of events:

      1.    On May 17, 2020, "third parties" allegedly "hijack[ed]" a T-Mobile line of service belonging to T-Mobile customer Brandon Buchanan through a "SIM-swap attack." (FAC ¶ 42.) A SIM-swap attack is a form of "account takeover fraud … whereby a criminal third-party convinces a wireless carrier like T-Mobile to transfer access to one of its legitimate customers' cellular phone number from the legitimate customer" to the control of a "criminal third-party." (*Id.* ¶ 9.)

      2.    The third-party criminals then purportedly used access to Mr. Buchanan's T-Mobile line of service to gain access to Mr. Buchanan's third-party text

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

      messaging application called Telegram, which according to the Complaint, Mr. Buchanan used to do business on behalf of his third-party "cryptocurrency exchange" company called Iterative.  (FAC ¶¶ 34, 48, 60.)

3. According to Mr. Cheng, the third-party hackers "impersonated" Mr. Buchanan by sending a Telegram message to Mr. Cheng, a customer of Iterative, asking him to voluntarily transfer cryptocurrency for a promised return of "above market value."  (FAC ¶¶ 47, 53, 61.)

4. Mr. Cheng concedes that he voluntarily and without any formal contract sent the third-party hackers 15 Bitcoins, allegedly valued at over $750,000, "expecting U.S. dollars in return to an account controlled by" Mr. Cheng.  (FAC ¶¶ 63, 64, 112.)

5. When the third-party hackers failed to honor the faith-based transaction, Mr. Cheng sued T-Mobile to recover the value of the 15 Bitcoin he sent to the scammers.

Based on these factual allegations, Mr. Cheng has asserted claims against T-Mobile under/for (1) the Federal Communications Act (the "Communications Act"), (2) the Computer Fraud and Abuse Act ("CFAA"), (3) negligence, (4) N.Y. General Business Law § 349 ("GBL"), (5) negligent hiring, retention, and supervision, and (6) gross negligence.  Mr. Buchanan, Iterative, and the third-party hackers with control of Mr. Cheng's Bitcoins are not parties in this action.

      **B.**      **T-Mobile's Grounds for Dismissal**

The Court should dismiss this action because Mr. Cheng (1) lacks standing to pursue any of his six causes of action against T-Mobile, and (2) failed to allege that T-Mobile's actions proximately caused his losses.  Because a further amendment to the FAC cannot remedy either dispositive legal issue, the Court should dismiss Mr. Cheng's claims with prejudice.

      **1.**      **Mr. Cheng Lacks Standing to Sue T-Mobile**

Mr. Cheng lacks standing to pursue his six causes of action.

***Negligence:***  Mr. Cheng's three negligence-based claims—for negligence, gross negligence, and negligent hiring, retention, and supervision—fail because T-Mobile (a) did not owe Mr. Cheng a legally cognizable "duty of care" and (b) cannot be responsible for his remote purely financial loss under the "economic loss" doctrine.

"The threshold question in any negligence action is:  does defendant owe a legally recognized duty of care to plaintiff?"  *Licci v. Am. Express Bank Ltd.*, 704 F. Supp. 2d 403, 410 (S.D.N.Y. 2010).  "The injured party must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for 'without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm.'"

April 14, 2021
Hon. P. Kevin Castel
Page 3

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7, 12, 750 N.E.2d 1055, 1060-61 (2001) (citation omitted).

Courts rountinely apply this principle in dismissing negligence claims asserted against service providers by non-customers. *See, e.g.*, *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, 2003 U.S. Dist. LEXIS 2707, at *18 (S.D.N.Y. Feb. 25, 2003) (dismissing negligence claim because bank owed no duty of care to a non-customer to prevent third-party fraud); *Kraus v. Lee*, 2015 U.S. Dist. LEXIS 64061, at *10 (E.D.N.Y. May 15, 2015) ("the Complaint fails to contain any facts sufficient to support a claim that [broker] Interactive owed a duty to plaintiff since plaintiff has not alleged that he was a customer of Interactive").

This limited duty is particularly important for mass-service providers. *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 289, 727 N.Y.S.2d 49, 54, 750 N.E.2d 1097, 1102 (2001). For example, an electric company does not owe a duty to the public at large even if they tangentially use electricity in the city and their harm from a darkened staircase is potentially foreseeable. Rather, the courts restrict liability "to direct customers of the utility in order to avoid crushing exposure to the suits of millions of electricity consumers in [the city]." *Id.* Likewise, a water company does not owe a duty to individuals "who had no contractual relationship with the utility." *Id.* at 290. "[O]nly those persons contracting with the utility c[an] state a cause of action" so utility providers are not subject to "limitless exposure" to strangers' remote claims of loss. *Id.* "Liability is in this way circumscribed because the special relationship defines the class of potential plaintiffs to whom the duty is owed." *Id.*

The FAC does not allege any facts supporting a cognizable duty of care owed by T-Mobile to non-customer Mr. Cheng based on any contractual, special, or other relationship. The only connection between T-Mobile and Mr. Cheng is that Mr. Cheng chose to do business with an individual impersonating a T-Mobile customer. But T-Mobile cannot know the varied ways in which its nearly 100 million customers use their T-Mobile lines of service in dealing with third parties. As a matter of law and sound policy, T-Mobile cannot bear a duty to protect strangers like Mr. Cheng from all manner of harms just because a T-Mobile phone line plays some role in another non-customer's fraudulent scheme.

Mr. Cheng's negligence claims independently fail as a matter of law based on the "economic loss" doctrine. "New York's economic loss doctrine is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence." *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010). "Under this principle, the defendant is not liable to a plaintiff for the latter's economic loss unless there exists 'a special relationship that requires the defendant to protect against the risk of harm to plaintiff.'" *Id.* (citation omitted). T-Mobile has no relationship, special or otherwise, with Mr. Cheng. Mr. Cheng's claims—purely for economic losses suffered based on the security decisions of a third-party customer, the actions of third-party hackers, and Mr. Cheng's decision to send assets to a third-party on faith—should be dismissed with prejudice.

**Statutory Claims:** Mr. Cheng's three consumer protection statute claims fail on similar standing grounds based on the remote nature of Mr. Cheng's claimed loss.

April 14, 2021
Hon. P. Kevin Castel
Page 4

Mr. Cheng's GBL claim fails because he is not a T-Mobile customer. "GBL § 349, is, 'at its core, a consumer protection device.'" *Frintzilas v. DIRECTV, LLC*, 2017 U.S. Dist. LEXIS 194415, at *6 (S.D.N.Y. Nov. 27, 2017) (citation omitted). "Since the 'gravamen of the complaint must be consumer injury or harm to the public interest,' courts in New York have declined to find standing where the plaintiff is neither a consumer nor a competitor" to the defendant. *Id.*; *see, e.g.*, *Silvercorp Metals Inc. v. Anthion Mgmt. LLC*, 36 Misc. 3d 1231(A), 1231A, 959 N.Y.S.2d 92 (N.Y. Sup. Ct. 2012) (dismissing GBL § 349 claim for lack of standing because plaintiff was "neither a consumer nor business competitor of defendants or defendants' services"). Mr. Cheng also fails to allege a "direct rather than a derivative injury" as the GBL requires. *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018). To state a viable GBL claim, "Plaintiffs must 'plead that they have suffered actual injury caused by a materially misleading' act, not that a misleading act led to further steps which eventually harmed them." *Id.* (citation omitted). Mr. Cheng's purported injuries are derivative of harms purportedly inflicted on Mr. Buchanan. Last, Mr. Cheng cannot enforce New York's GBL because he is a California resident and citizen (FAC ¶¶ 85, 91), and he "'cannot allege that [he was] deceived in New York.'" *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8 (2d Cir. 2012).

Mr. Cheng lacks standing under the CFAA for similar reasons. The CFAA applies, e.g., when a person "intentionally accesses a computer without authorization or exceeds authorized access," thereby obtaining information. 18 U.S.C. § 1030(a)(2). T-Mobile did not violate the CFAA because it did not access Mr. Cheng's computer systems without authorization. *See, e.g.*, *Scottrade, Inc. v. Broco Invs., Inc.*, 774 F. Supp. 2d 573, 584 (S.D.N.Y. 2011) (dismissing CFAA claim against defendant that did not engage in hacking but purportedly acted in concert with hacker: "Because Scottrade does not allege that Genesis hacked into its systems, or otherwise accessed its computers without authorization, Scottrade's CFAA claim against Genesis fails and must be dismissed."). Mr. Cheng also does not allege the requisite "loss" under the CFAA, which is limited to "remedial expenses borne by victims that could not properly be considered direct damage caused by a computer hacker." *Quintero v. Wells Fargo Bank N.A.*, 2018 U.S. Dist. LEXIS 177882, at *7-8 (E.D.N.Y. Oct. 15, 2018) (dismissing CFAA claim because plaintiffs could show nexus between defendant's actions and harm: "Indeed, the damages they allege are exemplary of 'direct damage caused by a computer hacker.'"). Mr. Cheng's losses resulted directly from the direct theft of his assets by third-party hackers.

Mr. Cheng also lacks standing to challenge the alleged disclosure of "consumer proprietary network information" or "CPNI" under the Communications Act because he is not a T-Mobile customer that suffered any loss based on any purported disclosure. (FAC ¶¶ 132-33.) "CPNI is information generated by telecommunications providers during the course of the provision of services for each of its customers." *See Telecom Int'l Am., Ltd. v. AT&T Corp.*, 67 F. Supp. 2d 189, 212 (S.D.N.Y. 1999). Under the Communications Act, T-Mobile can be held liable only for the "damages sustained in consequence of" an unauthorized CPNI disclosure. 47 U.S.C. § 206. T-Mobile never collected, received, or disclosed Mr. Cheng's CPNI and Mr. Cheng does not allege that his alleged cryptocurrency losses were caused by the disclosure of Mr. Buchanan's CPNI, e.g., information about the calls Mr. Buchanan placed or received. Mr. Cheng also purports to bring his Communications Act claim under Section 201(b), which generally provides that "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice,

classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful." But Section 201(b) only outlaws "particular practice[s]" that the Federal Communications Commission ("FCC") has determined provide a private right to compensation. Because the FCC has not authorized private actions with respect to the activity alleged in this case, Section 201(b) cannot form the basis for Mr. Cheng's Communications Act claim. *See N. Cty. Communs. Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1158 (9th Cir. 2010).

### 2. Mr. Cheng Fails to Allege Proximate Cause

Not only do Mr. Cheng's claims fail based on his lack of standing, they fail because the FAC negates any contention that T-Mobile proximately caused his loss.

"It is a well established principle of [the common] law that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause." *Bank of Am. Corp. v. Miami*, 137 S. Ct. 1296, 1305 (2017). "That venerable principle reflects the reality that 'the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). The "proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark*, 572 U.S. at 133.

In analyzing proximate cause, the "general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 236 (2d Cir. 1999). "For that reason, where a plaintiff complains of injuries that are wholly derivative of harm to a third party, plaintiff's injuries are generally deemed indirect and as a consequence too remote, as a matter of law, to support recovery." *Id.*; accord *Bank of Am. Corp. v. Braga Lemgruber*, 385 F. Supp. 2d 200, 220 (S.D.N.Y. 2005) ("courts in this Circuit have consistently found 'injuries that are wholly derivative of harm suffered by a third party' to be 'too remote' to establish the proximate causation necessary for a plaintiff to have standing to sue in tort") (citation omitted).

As detailed above, Mr. Cheng's claims of loss do not stem directly from action or inaction by T-Mobile. Instead, Mr. Cheng alleges a sprawling chain of events originating with T-Mobile's purported failures to take certain actions with respect to its customer, Mr. Buchanan. (*See* FAC ¶¶ 34-69.) But T-Mobile's involvement in that chain ended with the SIM swap on the third-party customer's account. It cannot bear responsibility for Mr. Cheng's indirect and derivative losses.

Mr. Cheng's causal theory also fails based on the doctrine of superseding cause. "There is another rule, settled by ample authority, viz. that, even if negligence is shown, it cannot be the proximate cause of the loss or damage, if an independent illegal act of a third party intervenes to cause the loss." *The Lusitania*, 251 F. 715, 732 (S.D.N.Y. 1918). "Where the acts of a third person intervene between the defendant's conduct and the plaintiff's injury … liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence." *Derdiarian v. Felix Contractor Corp.*, 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 670 (1980). Mr. Cheng alleges independent and intervening actions by (a) the third-party customer that conducted his company's cryptocurrency trading through his text messaging application, (b) third-party hackers that impersonated the customer on

April 14, 2021
Hon. P. Kevin Castel
Page 6

the third-party messaging app, and (c) Mr. Cheng, who chose to transfer untraceable Bitcoin to the third-party hackers based on faith, without any security. (*See* FAC ¶¶ 34-69.)

The doctrines of standing and proximate cause exist to prevent the type of remote and indirect claims that Mr. Cheng seeks to pursue. Given Mr. Cheng's inability to overcome these absolute bars to his claims through repleading, the Court should dismiss with prejudice.

**Proposed Schedule**

Absent a voluntary dismissal or further amendment of the complaint by Mr. Cheng, T-Mobile proposes the following schedule for the Motion:

- Motion Deadline:     May 7, 2021
- Opposition Deadline: May 28, 2021
- Reply Deadline:      June 11, 2021

T-Mobile respectfully requests the Court adjourn the initial pre-trial conference set for May 6, 2021, until after disposition of the Motion. The Court's decision on the dispositive issues outlined above may result in an early dismissal of the action and obviate the need for further Court intervention. In the alternative, if the Court is not inclined to adjourn the conference, T-Mobile respectfully requests the Court stay discovery until the Court decides the threshold issues raised in the Motion to avoid potentially unnecessary litigation expenses.

Respectfully submitted,

Davis Wright Tremaine LLP

John M. Magliery

cc:     Jeffrey L. Wilson, Counsel for Plaintiff
        Henry C. Chan, Counsel for Plaintiff
        Stephen M. Rummage, Counsel for T-Mobile (*pro hac vice*)
        James H. Moon, Counsel for T-Mobile (*pro hac vice*)